**John DOE, Appellant,**

v.

**DISTRICT OF COLUMBIA METROPOLITAN POLICE DEPARTMENT, Appellee.**

**No. 06–CV–1425.**

District of Columbia Court of Appeals.

Submitted March 13, 2008.

Decided May 29, 2008.

---

John Doe, pro se.

Linda R. Singer, Attorney General for the District of Columbia at the time the brief was filed, Edward E. Schwab, then Deputy Solicitor General, and Todd S. Kim, Solicitor General, were on the brief, for appellee.

Before FARRELL and THOMPSON, Associate Judges, and BELSON, Senior Judge.

THOMPSON, Associate Judge:

Appellant whom we will refer to as "John Doe" or "Doe,"[1] filed an action in the District of Columbia Superior Court under the District of Columbia Freedom of Information Act ("FOIA")[2] against former Chief Charles Ramsey of the Metropolitan Police Department (MPD).[3] Doe, who is incarcerated, sought documents that he believed would help him in a collateral challenge of his 1999 conviction, in the United States District Court for the Eastern District of Virginia, for conspiracy to distribute cocaine and heroin. After the trial court granted the District's motion for summary judgment, Doe moved for relief from that judgment pursuant to Super. Ct. Civ. R. 60(b). Upon the court's denial of his Rule 60(b) motion, Doe moved to amend that ruling pursuant to Super. Ct. Civ. R. 59(e). The court denied that motion as well. In this appeal, Doe contends that the trial court erred in denying his Rule 60(b) and 59(e) motions. He also asserts that he was not served with the District's motion for summary judgment,

---

1. At appellant's request set out in his "Motion for Rehearing," we refer to him by this pseudonym because of the nature of this case.

2. See D.C.Code § 2–531 et seq. (2001).

3. Doe sued Chief Ramsey in his official capacity. The District of Columbia has been substituted for Chief Ramsey, as defendant/appellee. For convenience, throughout this opinion we refer to the defendant-appellee as "the District."

that the trial court failed to give him timely notice of its entry of summary judgment, and that there exists a material factual dispute that made summary judgment for the District improper. We reverse and remand.

## I.

Doe is serving a sentence of 272 months for his conviction of conspiracy. According to his FOIA request, which is attached as an exhibit to his FOIA complaint, the government alleged that he was part of a conspiracy that existed from 1986 until 1998. His FOIA request was for documents that would show that, in 1989 or 1990, he reported his co-conspirators to MPD Detective Daniel Villare as participants in a murder, thereby (Doe claims) terminating his role in any conspiracy that then existed.[4] Specifically, Doe's letter stated that "[t]he information requested is pertained to my 'roll' [sic] as a witness in a homicide that transpired ... in the District of Columbia. In which, the detective assigned to the investigations was Daniel Villare from the 'Redrum' homicide team."[5] Doe's FOIA complaint, which he filed on May 22, 2003, asserts that he and Detective Villare signed a "contract" stating that Doe would "never be a government's witness in any public court,"[6] but that the information that Doe supplied to the detective culminated in an arrest of the killer. The complaint also asserts that Doe never received a response, from either MPD or the Mayor, to his repeated requests.[7]

At the time he filed his FOIA complaint, Doe was incarcerated at the Allenwood federal correctional facility ("FCI") in Pennsylvania. Subsequently, he was transferred to the FCI in Gilmer, West Virginia; then to the FCI in Memphis, Tennessee. The Superior Court docket sheet reflects that on August 23, 2004, the court docketed Doe's praecipe notifying the court of his change of address.[8] The "certificate of service" portion of Doe's change-of-address notice contained in the Superior Court jacket states that a copy was sent to counsel for the District.

On August 27, 2004, four days after the court received and docketed Doe's change-of-address praecipe, the District filed a

---

4. The letter also provides details about Doe's contact with Detective Villare and describes the location and victim of the murder in question, the names of the claimed perpetrators, and Detective Villare's role in apprehending the "actual killer."

5. Doe's FOIA request and his pleadings contain inconsistent statements about the date of the homicide that he claims to have witnessed and reported (perhaps due to typographical errors). The FOIA request states at one point that the information that Doe was requesting pertained to a homicide that transpired "on or about 1998 of [sic] 1999 in the District of Columbia." The request goes on to state that Doe learned of the homicide "[o]n or about during the time frame of the above mentioned years (1989–1989)." Doe's FOIA complaint asserted that he learned of the murder and reported it to the police in 1989 or 1990. The District's brief and its summary judgment papers refer to the homicide and Doe's reporting of it as having occurred in 1989 or 1990.

6. Doe claims that he took this measure "to protect himself [and his family] from any retaliation...." Doe's FOIA complaint also explains that Detective Villare visited him in jail while he was awaiting trial, but that "the AUSA assigned to petitioner['s] criminal charge[] told [Villare] ... not to get involve[d] in that case."

7. The District asserted in its answer that it was "without sufficient information to either admit or deny [Doe's] allegations" and further asserted that the District "may not have received Plaintiff's FOIA requests."

8. The change-of-address praecipe, dated July 23, 2004, explains that Doe arrived at the FCI in Tennessee on July 19, 2004.

motion for summary judgment. The District's motion stated that "[a] search of all data bases containing information as to confidential sources was searched in an effort to locate any documents relating to [Doe] and to identify any assistance provided by [Doe]," but that "[n]o information pertaining to [Doe] was recovered." The District's brief in support of its summary judgment motion asserted that "[a] search for the requested records was previously performed" and explains that the District's counsel also

> [C]aused a new search to be made of the department's database in an effort to locate the subject documents. On or about March of, [sic] 2004, a detective from the Metropolitan Police Department searched a computer database, WACIIS (Washington Area Criminal Intelligence Investigative System), to which only District of Columbia Metropolitan Police Department authorized personnel have access, for the subject records. The detective used all the information that plaintiff provided to this defendant in order to locate the requested documents, which allegedly contain information pertaining to plaintiff. This database is the only source of research that would contain information from 1989 or 1990 and was thoroughly searched in an attempt to uncover the subject Metropolitan Police Department document records.

The District's motion was accompanied by the declaration of MPD Detective Stanley Farmer, the MPD employee who conducted the search. Detective Farmer stated the following in his declaration:

> I am authorized to use the computer database WACIIS, Washington Area Criminal Intelligence Investigative System. I use this database in the normal course of my duties as a Detective and I am familiar with the program. I was contacted in this case to investigate whether [Doe] had ever acted as an informant to a homicide back in 1989 or 1990. In order to perform this search I obtained all information that [Doe] had provided in reference to said homicide. This information included that the victim was a Cuban man, the murder took place in 1989 or 1990, the murder took place in the District of Columbia in the interior of a basement, names of persons involved (2 full names and 3 first names), and that after learning this information, [Doe] reported to the RED-DRUM Homicide Division of the Metropolitan Police Department and spoke with a Detective Daniel Villare. Using the provided information I thoroughly searched the database looking for any connection [Doe] may or may not have had to a homicide investigation. This investigation took place on or about March 1, 2004. After a thorough search using all of [Doe]'s provided information, I could not recover any information or evidence that suggested that [Doe] had ever previously acted, in any capacity, as an informant to a homicide.

On September 23, 2004, the trial court granted the District's unopposed motion for summary judgment, stating that, in light of Detective Farmer's declaration that he "searched the relevant database and found nothing," "there is nothing to compel here."

Doe alleges that he would have opposed the District's motion for summary judgment if he had received it, but that—as shown on the District's certificate of service—the District mailed the motion to the FCI in West Virginia, where Doe no longer resided. The court's September 23, 2004 summary judgment order shows that it, too, was mailed to Doe's prior address at the FCI in Gilmer, West Virginia, despite the fact that, a month earlier, the

clerk's office had docketed Doe's change of address. The court's mailing to Doe was returned, with the envelope marked "Not deliverable as addressed—unable to forward—return to sender—cannot identify by name or number." [9]

Doe states that on November 8, 2005, unaware of the motion for summary judgment or the court's entry of summary judgment against him, he mailed a letter to the Superior Court to inquire about the status of his case. In reply to Doe's inquiry, the court mailed Doe a copy of the court's summary judgment ruling. Doe asserts that he received this mail on December 12, 2005, and, on that same day, submitted a motion to vacate the judgment as void pursuant to Super. Ct. Civ. R. 60(b)(4). A copy of this motion is not included in the parties' appendices and we have been unable to locate a copy of it in the Superior Court record. The District's brief appears to acknowledge, however, that "[in his Rule 60(b) motion], [Doe] urged [*sic*] that the order granting summary judgment should be vacated, because the District's motion had been served by mailing it to a prison from which he had been transferred and the order granting the summary judgment had also been mailed to a prior prison address."

The trial court denied Doe's Rule 60(b) motion on January 17, 2006. The court's order denying the motion states that:

> Plaintiff [Doe] claims that he was transferred to a different facility and thus never received Defendant's motion for summary judgment. As a result, he argues, he never had the opportunity to respond to it. . . . *Plaintiff has offered no reason for his fifteen-month delay in filing the instant Motion.*

Order at 1–2 (italics added). The court also reasoned that in light of the "sworn testimony indicating that a search had not revealed any sought document," Doe had failed to demonstrate the "exceptional circumstances" required for relief under Rule 60(b).[10]

Thereafter, Doe filed a motion, pursuant to Super. Ct. Civ. R. 59(e), to alter or amend the ruling that denied his Rule 60(b) motion to vacate the summary judgment order.[11] Doe explained in his Rule 59(e) motion and accompanying affidavit that he had informed both the court and counsel for the District of his new address in Tennessee, but did not receive notice of either the motion for summary judgment or the entry of summary judgment against him; that as a result he was denied due process; and that the trial court had

---

9. The Superior Court jacket contains both that envelope and a returned envelope, with the same markings, that had been mailed to Doe at the FCI Gilmer on September 10, 2004, containing the court's September 7, 2004 order continuing the date of the scheduled pre-trial conference.

10. The court reasoned that Doe had been incorrect to file his motion pursuant to Rule 60(b)(4) ("the judgment is void"), which had "no application to the instant case." The court found Rules 60(b)(1)-(5) inapplicable and concluded that Doe was "forced to rely on [Rule 60(b)(6)]," which authorizes relief for "any other reason justifying relief from the operation of the judgment."

11. Rule 59(e) permits a party to move to "alter or amend [a] judgment . . . no later than 10 days after entry of judgment." Super. Ct. Civ. R. 59(e). The Superior Court docket sheet shows February 1, 2006, as the filing date of Doe's "Affidavit & Declaration in support of his motion to vacate judgment" but shows July 26, 2006, as the filing date of the Rule 59(e) motion—even though the motion has an attached certificate of service stating that it was mailed on January 25, 2006. No explanation for the discrepancy appears in the record. However, the District states in its brief that Doe's "Rule 59(e) motion was appropriate and tolled the time for appealing from the order denying the Rule 60(b) motion," and we so treat it.

therefore erred in denying his Rule 60(b) motion for relief from the summary judgment ruling. He contended that pursuant to Rule 60(b)(4), the trial court should have vacated the entry of summary judgment as void. He explained that he filed the Rule 60(b) motion as soon as he learned of the court's entry of judgment against him, and that he had learned of it only after "ask[ing] the court's clerk of the status of the litigation." He stated that "he [had] waited over a year before he inquired about the status of the litigation[ ] [because] he was under the impression that the court calendar was crowded and that on [*sic*] due time the court was going to act on his case." He also asserted that the court should have found that his sworn complaint raised a material factual dispute sufficient to defeat summary judgment, and claimed that "whatever database [ ] Farmer claim[ed] he/she reviewed, obviously is not the correct one, or [Farmer] is lying to this court...."

On August 8, 2006, the trial court denied Doe's motion on the ground that it did "not raise any issues that were not considered in the Court's January 12, 2006 Order [denying the Rule 60(b) motion]." Doe timely filed this appeal.

## II.

■ Doe seeks review of (1) the trial court order denying his Rule 59(e) motion by which he had asked the court to reconsider its (2) denial of his Rule 60(b) motion, in which he had asked the court to vacate

its (3) summary judgment ruling. We review a trial court's denial of a Rule 59(e) motion to amend for an abuse of discretion. *See Nelson v. Allstate Ins. Co.*, 753 A.2d 1001, 1005 (D.C.2000). But, because the issue of whether the court abused its discretion *vel non* in denying Doe's Rule 59(e) motion hinges on the propriety of its denial of appellant's Rule 60(b) motion, we must turn first to a review of the court's ruling on Doe's motion for relief under Rule 60(b).[12]

■ In most instances, "[t]he decision whether to relieve a party from a final judgment pursuant to Rule 60(b) is committed ... to the sound discretion of the trial court, and appellate review is deferential and limited." *Jones v. Hersh*, 845 A.2d 541, 544–45 (D.C.2004). However, "the trial court has no discretion when relief is sought pursuant to subdivision (4) of Rule 60(b) on the ground that the judgment is void." *Id.* Whether a judgment is void is a question of law.[13] *Id.* at 545. Thus, appellate review of the court's decision on a Rule 60(b)(4) motion—which is how Doe styled his motion—is not deferential, but *de novo. Id.* If a judgment is void, it must be vacated. *Id.*

■ A judgment is void for purposes of Rule 60(b)(4) if the judgment was entered in violation of due process. *See Hudson v. Shapiro*, 917 A.2d 77, 82 (D.C. 2007) ("if a court proceeds to hear ... a habeas corpus petition and finds facts without notice to the prisoner sufficient to permit any meaningful participation by the

---

12. "[A] Rule 59(e) motion is proper to challenge [a] Rule 60(b) ruling. Additionally, [a party] can properly argue 60(b)(6) grounds in [its] motion to alter or amend...." *Inryco, Inc. v. Metropolitan Eng'g Co.*, 708 F.2d 1225, 1232 (7th Cir.1983).

13. The Rule 60(b)(4) movant "need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the judg-

ment treated for what it is, a legal nullity." *Jones v. Hersh*, 845 A.2d at 545 (quotation marks and citation omitted). Further, Rule 60(b) " 'places no time limit on an attack upon a void judgment, nor can such a judgment acquire validity because of laches on the part of him who applies for relief from it.' " *Id.* (quoting *Alexander v. Polinger Co.*, 496 A.2d 267, 269 (D.C.1985)).

**1218**

prisoner, the resulting judgment on the petition may be void and may be set aside under Rule 60(b)(4)") (quoting JAMES W. MOORE'S FEDERAL PRACTICE § 60.44 (3d ed.2006)). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Robinson v. Kerwin,* 454 A.2d 1302, 1307 (D.C.1982) (quotation marks and citation omitted). Accordingly, "violations of the Superior Court Rules which provide for notice and an opportunity to be heard have the effect of denying a litigant due process of law." *Evans v. Evans,* 441 A.2d 979, 980 (D.C.1982) (citation omitted).

## III.

■ Doe argued in his Rule 59(e) motion that the trial court erred in denying his Rule 60(b) motion because Superior Court Rules 5 and 77 were violated, in derogation of his rights to notice and the opportunity to be heard. Super. Ct. Civ. R. 5(a) states that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties." Service under Rule 5(a) may be accomplished by "[m]ailing a copy to the last known address of the person served." Super. Ct. Civ. R. 5(b). "Without notice of an impending grant of summary judgment, a defendant has no opportunity to be heard . . . [and so is] denied due process of law. . . ." *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 143 (5th Cir.1996).

■ Superior Court Rule 77 demands that "[i]mmediately upon the entry of an order or judgment the clerk shall serve a notice of the entry in the manner provided for in Rule 5(b) upon each party who is not in default for failure to appear, and shall make a note in the docket of the service." Super. Ct. Civ. R. 77(d)(1). Generally, a party may not rely upon a failure to receive notice of the entry of final judgment as a basis for relief from that judgment under Super. Ct. Civ. R. 60(b). *Id.; see also District of Columbia v. Watkins,* 684 A.2d 395, 398 (D.C.1996). However, as we observed in *Watkins,* "[w]hile the actual mailing of the notice is the critical element in the running of the time for notice of appeal, [citation omitted], the rule contemplates that the mail will be directed to the party's addresses where he or she is likely to receive it. Only when mail is properly directed can the act of mailing justify the presumption of receipt." *Id.* at 400 (citing *Toomey v. District of Columbia,* 315 A.2d 565, 567 (D.C.1974)). We held consequently that where the court clerk sent notice of the trial court's ruling to the appellant's prior address instead of to appellant's "last known address" and mailed the ruling through the court's "in-house" circulation system instead of through the "ordinary mail," and where the appellant did not receive the order, there was "a sufficient showing of extraordinary circumstances to support the trial court's exercise of its discretion to grant [appellant's Rule 60(b) ] motion." [14] *Id.*

■ Here, because we do not have before us a copy of Doe's Rule 60(b) motion, we cannot confirm directly that the

---

**14.** Specifically, we held that the appellant's circumstances made "the requisite showing of extraordinary circumstances for a finding of excusable neglect. . . ." *Id.* This was notwithstanding the general rule that "for purposes of Rule 60(b), excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to [the party's] negligence" and that "a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.' " *Pioneer Inv. Serv. Co. v. Brunswick Assocs. P'ship,* 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

motion advised the court that the court clerk did not mail the order to Doe's last known address or that Doe explained to the court that he filed his motion immediately after receiving notice of the order.[15] But, because the Superior Court jacket contains the envelope marked "return-to-sender" in which the court's summary judgment order had been mailed to Doe at his previous address, the record makes clear that Doe did not receive timely notice of the court's ruling.[16] We also can infer the content of Doe's Rule 60(b) motion from the court's ruling on Doe's Rule 59(e) motion, in which the court stated that Doe had not "raise[d] any issues that were not considered in the Court's January 12, 2006 Order [denying his Rule 60(b) motion for relief]." In his brief and affidavit in support of his Rule 59(e) motion—and thus, presumably, in his Rule 60(b) motion as well—Doe explained that it was not until December 12, 2005, after receiving a response from the court to his inquiry about the status of his litigation, that he learned of the District's summary judgment motion and the court's summary judgment ruling, and that he filed his motion for relief from judgment on the same day. In light of the foregoing, the court should not have re-garded Doe's Rule 60(b) motion as unreasonably delayed.

Further, we can infer, from the trial court's brief reference in its ruling on the Rule 60(b) motion, that Doe explained in his motion, at the very least, that he had been transferred to a different facility and that he never received the District's motion for summary judgment. With the explanation that he provided, his change-of-address notice that was docketed before the District's summary judgment motion was filed, and his prior rather than current address shown on the certificate of service attached to the District's motion, the court had before it evidence that at the very least called into question whether Doe had ever received a copy of the District's motion. In light of all these circumstances, we must conclude that the court erred in denying Doe's request for relief under Rule 60(b)(4) without at least a hearing to inquire into matters such as whether the District failed to mail its summary judgment motion to Doe's last address of which the District had been apprised and whether the motion papers were returned as undeliverable.[17] And, as discussed *infra,* such a hearing would not be futile.

15. "Appellant has the burden of demonstrating trial court error and must provide the appellate court with a record sufficient to show affirmatively that error occurred." *Jonathan Woodner Co. v. Adams,* 534 A.2d 292, 294 (D.C.1987). However, Doe is a *pro se* appellant and is incarcerated, circumstances that warrant some lenience. *"[P]ro se* litigants are not always held to the same standards as are applied to lawyers." *MacLeod v. Georgetown Univ. Med. Ctr.,* 736 A.2d 977, 980 (D.C.1999) (citation omitted). Moreover, "pleadings prepared by prisoners who do not have access to counsel [are to] be liberally construed." *Id.*

16. Thus, the court did not fulfill its obligation under Rule 77(d)(1) to "serve a notice of the entry [of summary judgment]" by "[m]ailing a copy to the last known address of the person served." Super. Ct. Civ. R. 77(d)(1).

17. We cannot tell from the record whether the District knew or should have known that Doe had been transferred to the FCI in Tennessee when it mailed its motion for summary judgment to the FCI in West Virginia. Doe's praecipe shows a mailing date of July 23, 2004, and the Superior Court date stamp and docket sheet show that the court received the praecipe on August 23, 2004. It might be presumed that the District received the change-of-address praecipe on or about the same date. But it is also possible that the praecipe and the District's August 27, 2004 motion crossed in the mail, and that the District was not on notice of Doe's new address when it attempted to serve him by mail with its motion for summary judgment. *Cf. Kidd*

 The District argues that Doe cannot be entitled to relief under Rule 60(b) because he "did not make a meritorious challenge to the summary judgment." We disagree. Summary judgment is appropriate only when the record, including "pleadings ... together with affidavits," indicates that there is no genuine issue as to any material fact and that "the moving party is entitled to judgment as a matter of law." *Smith v. Washington Metro. Area Transit Auth.*, 631 A.2d 387, 390 (D.C.1993); Super. Ct. Civ. R. 56(c). In the face of Doe's detailed complaint and his identification of at least one responsive document that he believes to exist in MPD files, the District's summary judgment papers were not adequate to establish the lack of any material factual issue and to show that the District was entitled to the judgment that it obtained. In particular, the declaration that the District offered in support of its motion for summary judgment did not support its representation that it had "searched the relevant database and found nothing" or the court's conclusion that there was "nothing to compel."

 As we have previously noted, many of the provisions of the District FOIA parallel those in the federal statute. *See Washington Post Co. v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 521 (D.C.1989). "Accordingly, except where the two acts differ, we have treated case law interpreting the federal FOIA as instructive authority with respect to our own Act." *Id.* at 521 n. 5 (citing *Grayson v. District of Columbia Dep't of Employment Servs.*, 516 A.2d 909, 911 n. 2 (D.C.1986)). The provisions that are relevant here are parallel, making that general approach appropriate here.[18] Case law in federal FOIA litigation establishes that "in order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. United States Dep't of the Army*, 287 U.S.App. D.C. 126, 137, 920 F.2d 57, 68 (1990). It is not enough for an agency affidavit to state that "a search was initiated of the Department record system most likely to contain the

*Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C.2007) ("the alleged failure of an individual to receive mail sent to the correct address under these circumstances does not constitute a deprivation of due process") (internal punctuation and citation omitted). Even in that case, however, notice to Doe may not have been constitutionally adequate. *Cf. Jones v. Grieg*, 829 A.2d 195, 199 (D.C. 2003) (holding, in a tax sale case, that while "notice by mail to the record owner generally satisfies due process commands," if "the notice is returned unclaimed, the District is then required to take some additional step to notify the record owner") (internal quotation marks and citations omitted); *Malone v. Robinson*, 614 A.2d 33, 38 n. 9 (D.C.1992) ("Had the notice of expiring redemption period not been returned, the District's mailing of that notice would have ... been constitutionally adequate, since service by mail is reasonably calculated to give notice in most circumstances").

Even in the absence of a finding of deprivation of due process, if the court determines that Doe did not timely receive actual notice of the District's motion, it could in its discretion grant him Rule 60(b) relief from the summary judgment order.

**18.** *Compare* D.C.Code § 2–532(a) and (a–2) ("Any person has a right to inspect, and at his or her discretion, to copy any public record of a public body ... [and][i]n responding to a request for records pursuant to this section, a public body shall make reasonable efforts to search for the records in electronic form or format ...") *with* 5 U.S.C. § 552(a)(3)(A) and (C) ("[E]ach agency, upon any request for records which (i) reasonably describes such records ... shall make the records promptly available to any person ... [and] ... shall make reasonable efforts to search for the records in electronic form or format ...").

information which had been requested...." *Id.* Rather, the agency affidavit in support of a motion for summary judgment must show "with reasonable detail, that the search method ... was reasonably calculated to uncover all relevant documents" and must "identify the terms searched or explain how the search was conducted." *Id.* "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the ... court to determine if the search was adequate in order to grant summary judgment." *Id.; see also Morley v. CIA,* 378 U.S.App. D.C. 411, 425, 508 F.3d 1108, 1122 (2007) (holding that a declaration that "provide[d] no information about the search strategies" and failed to " 'identify[ ] the terms searched or explain[ ] how the search was conducted' " was not an adequate basis for summary judgment). And, "[a]t the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby,* 287 U.S.App. D.C. at 137, 920 F.2d at 68.[19]

The declaration of Detective Farmer that the District submitted in support of its summary judgment motion did not meet the foregoing standards. Although the District's brief asserted that a search was performed of the database that "is the only source of research that would contain information from 1989 or 1990" and the District's motion averred that a "search of all data bases containing information as to confidential sources was searched," Detective Farmer's affidavit supports neither of these allegations. Detective Farmer nowhere stated in his declaration that no data source other than the WACIIS database that he searched was likely to produce responsive documents, or that all files likely to contain responsive materials were searched. Nor did Detective Farmer describe the search terms that he used or his search method.

Yet, as described above, Doe's FOIA complaint specifically identified at least one document that Doe asserts must exist within MPD's files: the "contract" that Doe asserts he and Detective Villare signed. In the face of that allegation, and in the absence of a sworn statement by Detective Farmer or someone else within MPD to the effect that the declarant

---

**19.** At the same time, "[t]here is no requirement that an agency search every record system," and a search is not presumed unreasonable simply because it fails to produce all relevant material. *Id.* (citing *Meeropol v. Meese,* 252 U.S.App. D.C. 381, 391–92, 790 F.2d 942, 952–53 (1986), and *Miller v. United States Dep't of State,* 779 F.2d 1378, 1384–85 (8th Cir.1985)). Nor need an agency demonstrate that all responsive documents were found and that no other relevant documents could possibly exist, *see Perry v. Block,* 221 U.S.App. D.C. 347, 354, 684 F.2d 121, 128 (1982), and an agency's failure to turn up specific documents does not undermine the determination that it conducted an adequate search for the requested documents. *See Iturralde v. Comptroller of Currency,* 354 U.S.App. D.C. 230, 315 F.3d 311, 315 (2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search") (citation omitted). *See also Oglesby,* 287 U.S.App. D.C. at 136 n. 13, 920 F.2d at 68 n. 13 (a requester's "own conviction that the ... records must have been created is pure speculation. Such hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search"). Thus, Doe's insistent statements that the documents he seeks must exist and his suggestion that Detective Farmer must have lied would not have been enough to defeat summary judgment if the District had supported its motion with a sufficiently detailed declaration.

searched all files likely to contain responsive material and setting out details about the search method, it cannot be said that there is an absence of any material issue about whether the District has complied with its FOIA obligations. In short, in light of these deficiencies in the District's summary judgment papers, Doe has raised a challenge of sufficient merit to avoid summary judgment.

For all the foregoing reasons, the trial court erred in denying Doe's Rule 60(b)(4) motion without at least a hearing and abused its discretion in denying his Rule 59(e) motion. Accordingly, we reverse the rulings denying Doe's motions and remand to the trial court for further proceedings consistent with this opinion.

*So ordered.*