**Louis H. WEINSTEIN, Plaintiff,**

v.

**U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant.**

**Civil Action No. 97–0307(JR).**

United States District Court, District of Columbia.

Sept. 10, 1997.

Louis H. Weinstein, Edison, NJ, pro se.

Jonathan Kaplan, Asst. U.S. Atty., Washington, DC, for Defendant.

### MEMORANDUM OPINION

ROBERTSON, District Judge.

Plaintiff brought this Freedom of Information Act ("FOIA") suit to compel the U.S. Department of Health and Human Services ("HHS") to release thirty documents relating to the competitive grant application process of the National Institutes of Health ("NIH"). Defendant moved for summary judgment on the grounds that the documents are protected from disclosure under FOIA Exemptions 5 and 6. 5 U.S.C. §§ 552(b)(5) & (6). On July 1, 1997, at the conclusion of oral argument on defendant's motion, I directed the government to present two documents (# 1 and # 24) for *in camera* review. Plaintiff subsequently narrowed his FOIA demand to a single document, # 24, and to information in the other requested documents relating to the reliability of a specific technology used to measure lead in bone.

### Background

The documents sought in this case were created as part of the peer review process NIH uses to determine which research grants it will fund. NIH enlists groups of expert scientists—Scientific Review Groups ("SRGs")—to evaluate the scientific merits and significance of applications and make recommendations as to whether they should be funded. The SRGs consider factors such as the importance of the proposed research problem; the originality of the approach; the training, experience, and research competence of the investigators; the adequacy of the experimental design; the suitability of facilities; and the appropriateness of the requested budget relative to the proposed work. The SRGs create a "summary statement" for each application, setting forth a summary of the factors considered by the group and a recommendation for or against funding. The summary statement is presented to an advisory council that reviews all the applications in a particular scientific area.[1] The advisory council then makes its own funding recommendations to NIH, which makes the final funding decisions.

Plaintiff's narrowed demand now seeks release of Document # 24, which is a letter written by a grant applicant to an official at NIH in response to comments about his application made in an SRG report, as well as any comments found in the originally requested summary statements that deal with the reliability of LXRF technology as a method of measuring lead in bone. I have concluded, for the reasons set forth below, that FOIA Exemption 5 protects all the requested information from disclosure.[2]

### Analysis

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been interpreted to encompass all documents normally privileged in the civil discovery context, including documents that fall within the "deliberative process" privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). That privilege, uniquely applicable to the government, protects from disclosure "advisory opinions, recommendations and deliberations comprising part of a process by which the governmental decisions and policies are formulated." *Id* . at 150, 95 S.Ct. at 1516 (internal quotations omitted); *see also Jordan v. Dep't of Justice*, 591 F.2d 753, 772 (D.C.Cir.1978) (en banc). The deliberative process privilege, which was established to prevent injury to the quality of agency decisions, applies to all requested information that "bear[s] on the formulation or exercise of agency policy-oriented *judgment.*"

---

1. At some point in the review process, the SRG's report is also provided to the applicant.

2. This conclusion makes it unnecessary to decide whether Exemption 6 might apply.

*Petroleum Information Corp. v. Dep't of Interior,* 976 F.2d 1429, 1435 (D.C.Cir.1992) (emphasis in original).

■■■ To qualify for Exemption 5, information must be "predecisional" and "deliberative." *See Access Reports v. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C.Cir.1991). Plaintiff concedes that the information he requests is predecisional but questions whether it is deliberative. In deciding whether information is deliberative, it is necessary to examine the context in which the information is used, and to determine what role the information plays in the government's decision-making process and what harm its release would do to the decision-making process. *Formaldehyde Inst. v. Dep't of HHS,* 889 F.2d 1118, 1123–24 (D.C.Cir.1989).

The summary statements reflect the collective views of SRGs on a wide variety of issues relevant to the feasibility and value of research proposals submitted to NIH. The Deputy Director for Extramural Research at NIH declares that public disclosure of reviewer comments would discourage candid and honest evaluations of applications because the reviewers would be reluctant to inflict harm on the professional reputation of applicants. Baldwin Decl. at 10–11. According to NIH, eliminating the confidentiality of the peer review process would render the process "dysfunctional" and would result in funding decisions that are "less informed, less fair, and less likely to achieve the best results for NIH and for the public good." Baldwin Decl. at 11. HHS asserts on the basis of that declaration that disclosure of the summary statements would undermine the deliberative process that characterizes NIH's competitive grant application process.

■■■ I find—and plaintiff has all but conceded—that the opinions expressed in SRG reports are "deliberative" in nature and that their disclosure would adversely affect the decision–making process at NIH. *See Formaldehyde Institute,* 889 F.2d at 1124–25 (finding that Exemption 5 applied to an article review process employing outside review-

ers); *see also United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974) ("Human experience teaches that those who expect dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.") Exemption 5 applies to predecisional materials, such as the ones sought here, that are based on personal opinions and reflect "ruminations about how to exercise discretion on some policy matter .…" *Petroleum Information Corp.,* 976 F.2d at 1435; *see also Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (1980) (holding that Exemption 5 covers "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"). The question presented here is whether information carved out of the SRG reports (statements relating to LXRF technology) or a document related to the SRG reports (Document 24) has been properly withheld.

■■■ It is not necessary to undertake a fact-intensive analysis of whether release of specific statements relating to LXRF technology would undermine the NIH's deliberative process. Release of deliberative statements that bear directly on the exercise of the agency's policy judgment—including those that refer to LXRF technology—is not required by FOIA. There is no need to dissect and analyze each withheld portion of the documents. Examining whether disclosure of each specific statement contained in a deliberative document undermines the deliberative process would be needlessly complicated and would encourage the submission of self-serving, boilerplate affidavits from agencies that mimic the operative standards of law.[3]

■■■ Document 24 is a letter written in 1992 by Dr. John F. Rosen, an applicant for funding, to Dr. Annette G. Kirshner, an official at NIH. Dr. Rosen's letter responds to statements about his application made in an SRG report. After inspection of the SRG report and Dr. Rosen's letter *in camera,* I

---

**3.** If individualized analysis of the harm to agency deliberations caused by release of specific state-

ments about LXRF technology were required, the present record would need more development.

find that releasing the letter would effectively disclose the substance of the SRG comment. I must accordingly decide whether Exemption 5 and the deliberative process privilege protect a document created outside the deliberative process whose release would reveal the substance of the comments made within that process.

The parties have not cited and the Court has not found a case that squarely answers the question, but *FBI v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982), suggests the proper analysis. In that case, the Supreme Court held that documents not created for law enforcement reasons could be withheld under FOIA Exemption 7, if they would *reveal* information from law enforcement records. *Id.* at 625–29, 102 S.Ct. at 2061–63. Here, Dr. Rosen's letter, although not itself an intra-agency document, is part of the "give-and-take" of the deliberative process that has traditionally been protected by Exemption 5. *See Petroleum Information Corp.*, 976 F.2d at 1434; *Coastal States Gas Corp.*, 617 F.2d at 866. Release of the document would effectively expose the substance of the SRG report and have the effect, attenuated though it may be, of discouraging communication between applicants and the agency. Document # 24 thus falls within the reach of the deliberative process privilege.

An appropriate order accompanies this memorandum.

### ORDER

For the reasons explained in the accompanying memorandum, it is this 8th day of September, 1997,

**ORDERED** that defendant's motion for summary judgment [# 9] is granted. It is

**FURTHER ORDERED** that this case is dismissed.