*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1476

FRATERNAL ORDER OF POLICE, METROPOLITAN POLICE LABOR COMMITTEE,
APPELLANT,

V.

THE DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(11-CAB-6032)

(Hon. Todd E. Edelman, Trial Judge)

(Argued September 25, 2013        Decided November 7, 2013)

*Barbara E. Duvall*, with whom *Paul A. Fenn* was on the brief, for appellant.

*Jason Lederstein*, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on the brief, for appellee.

Before GLICKMAN and BECKWITH, *Associate Judges*, and NEBEKER, *Senior Judge*.

GLICKMAN, *Associate Judge*: The Fraternal Order of Police, Metropolitan Police Labor Committee ("FOP") appeals the trial court's partial award of summary judgment to the District of Columbia in its civil action stemming from a

request under the D.C. Freedom of Information Act ("FOIA"). FOP argues that the court erred in (1) upholding the District's assertion of the deliberative process privilege with respect to certain requested documents, (2) sanctioning an inadequate search for responsive documents, and (3) ruling that the District's response to its FOIA request was timely. For the reasons that follow, we reverse the court's judgment in part and remand for further proceedings to determine the availability of the deliberative process privilege and the adequacy of the District's document search.

## I. Factual and Procedural Background

On July 23, 2010, FOP made a FOIA request for all documents "in possession, custody, or control of the Metropolitan Police Department (MPD)" relating to the MPD's involvement with an organization known as Peaceoholics.[1]

---

[1] FOP asked for the following categories of documents:

> 1) Any and all documents from January 1, 2007 to July 17, 2010 related or referring in any manner to the MPD providing Peaceoholics with money, grant money or police services that involve MPD manpower, vehicles, facilities or any other MPD resource.

> 2) Any and all documents from January 1, 2007 to July 17, 2010 related or referring in any manner to Peaceoholics requesting money, including, but not

*(continued…)*

The District had fifteen work days, or until August 13, 2010, to respond to this request by making the records "accessible" to FOP or specifying what documents it had determined to withhold and "the reasons therefor."[2] On August 10, 2010,

---

*(continued…)*

limited to, grant money, from MPD or requesting police services from MPD that involved manpower, vehicles, facilities or any other MPD resource.

3) Any and all documents from January 1, 2007 to July 17, 2010 related or referring in any manner to any non-overtime or overtime costs associated with the matters set forth in Request No. 2 that were borne by MPD personnel to fulfill Peaceoholics' requests.

4) Any and all e-mails and attachments sent from any other District agencies, including, but not limited to, the Mayor's office to the MPD from January 1, 2007 to July 17, 2010, requesting that MPD provide assistance of any kind to, including, but not limited to, the provision of any MPD resource to Peaceoholics.

5) Any and all documents from January 1, 2007 to July 17, 2010 indicating or referring in any manner to the type of work performed, or activities engaged in, by Peaceoholics.

6) Any and all documents from January 1, 2007 to July 17, 2010 rating or evaluating in any manner the work performed, or activities engaged in, by Peaceoholics.

7) Any and all documents from January 1, 2007 to July 17, 2010 indicating or referring in any manner to any awards for or achievements of Peaceoholics made by MPD.

[2] D.C. Code § 2-532 (c) (2012 Repl.).

however, before the District's response was due, FOP filed a FOIA action against the District in Superior Court to compel it to produce the requested documents. FOP apparently jumped the gun in the mistaken belief that the statutory deadline for a response from the District had passed.

Three days later, the District answered FOP's FOIA request. It informed FOP that 120 pages of responsive documents were available for pick up, and it provided a so-called *Vaughn* index[3] listing approximately 300 documents being withheld in whole or part (the "First Production"). The District asserted the deliberative process privilege as its reason for not producing many of the withheld documents.[4] A few months later, though, the District voluntarily produced all but six of those documents (the "Second Production"). The District also explained that it had looked for documents responsive to the FOIA request by searching the electronic communications of seventeen named MPD employees (and the hard

---

[3] A *Vaughn* index, first described in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), is composed of "detailed indexes itemizing each item withheld, the exemptions claimed for that item, and the reasons why the exemption applies to that item." *Lykins v. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984).

[4] This was not the only ground the District invoked for withholding or redacting requested records. The District also invoked the attorney-client privilege and the personal privacy exemption. *See* D.C. Code § 2-534 (a)(2), (a)(4), and (e) (2012 Repl.). Its assertion of these other grounds is not challenged in this appeal.

drives and paper files of two of them), using several search terms (such as "peaceoholics and grant" and "peaceoholics and evaluation").

Meanwhile, the District moved to dismiss FOP's lawsuit as having been filed prematurely. In April 2011, the trial court granted the District's motion and dismissed the FOIA action without prejudice.

FOP commenced the current action three months later by filing a new complaint challenging the adequacy of the District's response to its FOIA request. In due course, the parties filed cross motions for summary judgment. On May 1, 2012, the trial court issued an order granting each party's motion in part. It upheld the District's invocation of the deliberative process privilege, and it rejected FOP's contention that the District's response to its FOIA request had been untimely. But the court partly agreed with FOP that the District had not conducted a thorough enough search for responsive documents; although the court was not persuaded that the District should have searched the files of additional individuals or in additional locations, it ruled that the District had utilized unduly narrow search terms in carrying out its search. Accordingly, though the court refused to direct the District to expand its search in other respects, it ordered the District to look for all

documents containing the word "Peaceoholics" and report the results within twenty days.[5]

On May 15, 2012, before the District submitted its report, FOP moved the court to reconsider its grant of partial summary judgment to the District and asked the court to view *in camera* the documents for which the District had invoked the deliberative process privilege.[6] Six days later, on May 21, 2012, the District produced documents discovered in the expanded search that the court had ordered (the "Third Production"), along with a supplemental *Vaughn* index in which the District invoked the deliberative process privilege to withhold parts of some sixty-two of the newly found documents. After the District thereafter filed its opposition to FOP's motion for reconsideration, the trial court granted leave for FOP to reply.

---

[5] The court's ruling with respect to the search terms is not at issue in this appeal.

[6] In its motion for reconsideration, FOP mistakenly identified documents that had been turned over in the District's Second Production as the ones for which the District was still claiming the privilege. On appeal, the District argues that this mistake amounted to a waiver by FOP of its claim with respect to the six documents the District actually continued to withhold. We disagree. From the outset, FOP consistently protested the District's invocation of the deliberative process privilege with respect to any documents and it is clear that the trial court understood which documents still were being withheld when FOP moved for reconsideration. Thus, we shall consider whether the District properly invoked the privilege with respect to those documents.

In its reply, FOP called the court's attention to the Third Production and challenged the District's assertion of the deliberative process privilege to shield additional documents found in the expanded search the court had ordered. However, on July 31, 2012, the court affirmed its earlier rulings and declined to view any of the withheld documents *in camera*.

## II. Analysis

Our review of a grant of summary judgment is de novo: We "conduct an independent review of the record and apply the same substantive standard used by the trial court."[7] We view the record in the light most favorable to the party opposing summary judgment.[8] Thus, "summary judgment is appropriate only when there are no material facts in issue and it is clear that the movant is entitled to judgment as a matter of law."[9]

---

[7] *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C. 2007).

[8] *Id.*

[9] *Carter v. District of Columbia*, 980 A.2d 1217, 1222 (D.C. 2009).

In this appeal, FOP claims that it is entitled to summary judgment on each of the three issues it raised in the trial court. First, FOP contends that the trial court erred in concluding that the District properly invoked the deliberative process privilege to shield documents from disclosure. FOP argues that the District's assertion of the privilege did not suffice to demonstrate its applicability to any of the withheld documents, and further, that it is necessary for the head of the department with control over the information to invoke the privilege, which did not occur in this case. Second, FOP claims that the trial court erred in ruling, after the Third Production, that the District had conducted an adequate search for responsive documents. FOP argues it was unreasonable for the District to limit its search to the electronic communications of only seventeen MPD employees and the hard drive and paper files of only two of them. Third, FOP contends that the trial court erred in concluding that the District's compliance with its FOIA obligations was timely.

The Freedom of Information Act declares it to be "[t]he public policy of the District of Columbia . . . that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who

represent them as public officials and employees."[10]   To that end, FOIA's provisions are to "be construed with the view toward expansion of public access and the minimization of costs and time delays to persons requesting information."[11] As we have noted before, this strong policy of disclosure is the reason FOIA "not only places the burden on the administrative agency 'to sustain its action,' but also authorizes this court to review the agency's withholding of requested FOIA information de novo."[12]   Therefore, "the provisions of the Act giving citizens the right of access are to be generously construed, while the statutory exemptions from disclosure are to be narrowly construed, with ambiguities resolved in favor of disclosure."[13]  Because many provisions of the D.C. FOIA mirror provisions in the federal Freedom of Information Act,[14] we have found case law interpreting the federal FOIA to be "instructive authority with respect to our own Act." [15]

---

[10]  D.C. Code § 2-531 (2012 Repl.).

[11]  *Id.*

[12]  *Padou v. District of Columbia*, 29 A.3d 973, 980 (D.C. 2011) (citing D.C. Code § 2–537 (b) (2012 Repl.)).

[13]  *Riley v. Fenty*, 7 A.3d 1014, 1018 (D.C. 2010) (internal quotation marks omitted).

[14]  *See* 5 U.S.C. § 552 (2013).

[15]  *Doe v. District of Columbia Metro. Police Dep't*, 948 A.2d 1210, 1220 (D.C. 2008).

*A. The Deliberative Process Privilege*

The D.C. FOIA lists fourteen categories of documents that may be exempt from disclosure.[16]  Exemption 4 shields "[i]nter-agency or intra-agency memorandums or letters, including memorandums or letters generated or received by the staff or members of the Council, which would not be available by law to a party other than a public body in litigation with the public body."[17]  Explicitly encompassed by that exemption are documents within the deliberative process privilege.[18]

FOP challenges the District's invocation of the deliberative process privilege with respect to both the six documents the District withheld from its First and Second Productions and the additional, belatedly discovered documents it withheld

---

[16]  *See* D.C. Code § 2-534 (2012 Repl.).

[17]  *Id.* § 2-534 (a)(4).  This exemption is substantively equivalent to "Exemption 5" in the federal FOIA.  *See* 5 U.S.C. § 552 (b)(5) (exempting "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency").

[18]  D.C. Code § 2-534 (e) ("The deliberative process privilege . . . [is] incorporated under the inter-agency memoranda exemption listed in subsection (a)(4) of this section.").

from its Third Production. Although the District contends that its claim of privilege in connection with the Third Production is not properly before this court, we disagree. FOP objected promptly to that claim of privilege in the reply brief it filed in support of its motion for reconsideration, and the trial court specifically addressed the objection by stating in its order denying reconsideration that the District's invocation of the deliberative process privilege in connection with the Third Production "appear[ed] adequate." FOP noted a timely appeal from that order. Even if FOP might have followed a different procedural route in the trial court to attack the District's claim of privilege, we do not perceive that the District has been prejudiced by FOP's failure to proceed differently or that the District will be prejudiced by our consideration of the issue in this appeal.

The deliberative process privilege "shelters documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."[19] To qualify under this privilege, "information must be both 'predecisional' and 'deliberative.'"[20] "A document is 'predecisional' if it was prepared in order to assist an agency decision

---

[19] *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (internal quotations omitted).

[20] *Id.*

maker in arriving at his decision rather than to support a decision already made, and material is 'deliberative' if it reflects the give-and-take of the consultative process."[21] "To ascertain whether the documents at issue are predecisional, the court must first be able to pinpoint an agency decision or policy to which these documents contributed."[22] In ascertaining whether the documents are deliberative, the "key question . . . is whether disclosure of the information would discourage candid discussion within the agency."[23] As a rule, to be deliberative, the document must "reflect the personal opinions of the writer rather than the policy of the agency."[24] Generally speaking, therefore, "[f]actual material that does not reveal the deliberative process is not protected" by the privilege or the associated FOIA exemption.[25] Thus, "when material could not reasonably be said to reveal an

---

[21] *Id.* (internal citations omitted).

[22] *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (internal quotation marks and brackets omitted).

[23] *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991).

[24] *Morley*, 508 F.3d at 1127 (internal quotation marks omitted). This requirement prevents an agency from developing "a body of secret law," which dictates the actions of the agency but is hidden from the public "behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980).

[25] *Morley*, 508 F.3d at 1127 (internal quotation marks omitted). Courts have recognized, however, that "[i]n some circumstances . . . the disclosure of even

*(continued…)*

agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable."[26]

When putting forth its reasons for claiming that specific documents are exempt, a government agency must do so in a manner that "permit[s] adequate adversary testing of the agency's claimed right to an exemption, and enable[s] the [trial] [c]ourt to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves . . . [and] without thwarting the [claimed] exemption's purpose."[27] The burden is on agencies withholding information to "supply the courts with sufficient information to allow [them] to make a reasoned determination that they were correct."[28] Summary judgment is appropriate if an agency's submission "describe[s] the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate[s]

---

*(continued…)*
purely factual material may so expose the deliberative process within an agency that it must be deemed exempted." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977).

[26] *Petroleum Info.*, 976 F.2d at 1435.

[27] *King v. United States Dep't of Justice,* 830 F.2d 210, 218 (D.C. Cir. 1987).

[28] *Coastal States*, 617 F.2d at 861.

that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[29]

The six documents that the District withheld from the First and Second Production by invoking the deliberative process privilege were listed as numbers 413 to 418 in the *Vaughn* index for those productions. The index stated only that the six documents constitute an email "chain" that "[d]etails internal grant review process" and "reveals internal deliberative process."[30] However, in support of its motion for summary judgment, the District also relied on a declaration under penalty of perjury made by Leeann Turner, the Executive Director for the Corporate Support Bureau of MPD. Turner's declaration states that documents 413 to 418 are emails "that constitute a discussion among District employees at

---

[29] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) ("In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.") (internal citations omitted).

[30] The authors of the emails were identified as Leeann Turner of the MPD and two named individuals in the Executive Office of the Mayor. The recipients were identified as Turner and Chief of Police Cathy Lanier.

MPD and the Executive Office of the Mayor, pertaining to the allocation of grant money." The declaration explains that "the E-mails regarding a grant proposal made to MPD by [a non-profit organization for which Peaceoholics acts as a fiduciary agent] . . . reflect deliberations regarding [the] proposal, whether MPD should approve the grant, and what additional information was needed to assist MPD in that determination."

An agency declaration submitted in response to a FOIA request is accorded a presumption of good faith that is not overcome by speculative or conclusory objections.[31] FOP argues that the declaration is substantively deficient, but we disagree. While Turner's description of the six emails is brief, it supplied the court with specific enough information as to "what the agency is refusing to produce and why" for the court to assess the applicability of the claimed exemption from disclosure.[32] Requiring the District to furnish more information regarding the content of the emails would risk undermining the exemption. We further hold that Turner's declaration established that the District properly invoked the deliberative process privilege to withhold documents 413 to 418. The declaration confirms that

---

[31] *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

[32] *Fidducia v. Dep't of Justice*, 185 F.3d 1035, 1042 (9th Cir. 1999).

the emails were both predecisional, in that the offices involved had not yet decided whether to approve the proposed grant, and deliberative, in that the emails evinced the process through which the employees consulted about whether the proposal should be approved.[33]

Nor do we agree with FOP that the Turner declaration is insufficient because only a department head with control over the information in question may invoke the deliberative process privilege. FOP points to no FOIA case in which any court has held this; it relies on the authority requiring a department head to assert the privilege to resist discovery in civil litigation.[34] But as the United States District Court for the District of Columbia has said, "although the deliberative process

---

[33] There is no dispute that an agency decision whether to approve a grant proposal is the sort of activity to which the deliberative process privilege may apply. *See, e.g.*, *AIDS Healthcare Found. v. Leavitt*, 256 F. App'x 954 (9th Cir. 2007) (records concerning agency review of grant application held exempt from applicant's FOIA request under deliberative process privilege); *Casad v. Dep't of Health & Human Servs.*, 301 F.3d 1247 (10th Cir. 2002) (material that reflected scientific review group's thoughts and conclusions about grant applications exempt from disclosure under the deliberative process privilege); *Weinstein v. Dep't of Health & Human Servs.*, 977 F. Supp. 41 (D.D.C. 1997) (reports by scientists concerning potential funding of scientific research through competitive grant exempt from disclosure under the deliberative process privilege).

[34] *See, e.g.*, *Landry v. Federal Deposit Ins. Corp.*, 204 F.3d 1125, 1135-36 (2000); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 405 n.11 (D.C. Cir. 1984).

privilege requires invocation by a high-level agency official in civil discovery, no court has ever indicated that such an official must make the determination that a document comes within [the FOIA exemption incorporating the deliberative process privilege], and . . . courts routinely accept a declaration from an employee at the agency other than a high level official as documentation of [a] deliberative process claim" in FOIA cases.[35]

In *Federal Trade Commission v. Grolier Inc.*,[36] the Supreme Court rejected the premise that invocation of the FOIA exemption for privileged documents—the exemption at issue in this case—is subject to the same rules that would govern assertion of the privilege at issue in civil discovery. FOIA, the Court explained, allows the government to withhold all documents that are "normally" privileged in the civil discovery context, and hence are not "routinely" available to litigants on a mere showing of relevance, regardless of whether a particular private litigant in a civil case would be able to overcome the governmental assertion of privilege (for

---

[35] *Lardner v. United States*, No. 03-0180, 2005 U.S. Dist. LEXIS 5465, at *28 (D.D.C. Mar. 31, 2005) (citations omitted).

[36] 462 U.S. 19 (1983).

example, because the private litigant's need for the document outweighs the government's need to withhold it).[37]

In *Lardner*, the district court observed that the principles articulated in *Grolier* "create a divide between the rules of FOIA and civil discovery."[38] The procedural requirements for asserting a governmental privilege in civil discovery thus do not "automatically carry over" into the FOIA context.[39] And the district court identified several reasons for not importing into FOIA litigation the civil discovery requirement that a high-level agency official assert the government's privilege. First, both in general and with respect to the deliberative process privilege in particular, the applicability of a FOIA exemption depends on "the content or nature" of the document sought and not on "the manner in which the exemption is raised."[40] The exemption for documents that are "normally" privileged is meant to be "interpreted in a manner that produces categorical and

---

[37] *Id.* at 26, 28 ("It is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the *normally* privileged.").

[38] *Lardner*, 2005 U.S. Dist. LEXIS 5465, at \*19.

[39] *Id.* at \*21.

[40] *Id.* at \*23.

easily applied rules"—a goal that would be thwarted if the availability of the exemption depended on the particular agency employee who invoked it or how the employee did so.[41]

In addition, the district court pointed out the "critical difference between the government's invocation of a privilege in civil discovery and its decision to withhold documents under FOIA."[42] The former is "an act of resistance to the disclosure of information in a judicial proceeding" that requires the court to balance the private litigant's need for the information against the government's prerogatives and interests.[43] Where that is the case, it makes sense to require a responsible government official to evaluate the strength of the government's need to withhold information and make the decision whether to assert the privilege. But no such judicial balancing or sensitive evaluation is called for when the government invokes a FOIA exemption based merely on "a determination that a statutory provision protects the documents from disclosure."[44] Further, the district

---

[41] *Id.* at *23, *25-26.

[42] *Id.* at *26.

[43] *Id.*

[44] *Id.* at *27.

court noted, nothing in FOIA's text or legislative history suggests that Congress intended that the decision to withhold documents under a statutory exemption would need to be made personally by the head of the agency or other senior official. And the burden of such a requirement, if it were to be imposed, would be considerable, with little benefit to show for it.

For these reasons, the district court concluded in *Lardner* that FOIA does not require a department head or other senior official to invoke the government's privilege in order for an agency to shield documents from disclosure. We agree with the court's analysis and find it to be equally applicable to Exemption 4 of the D.C. FOIA and the District's invocation of the deliberative process privilege. We hold that the District did not need to submit the affidavit or declaration of a department head or other high-level official in order to claim the deliberative process privilege against disclosure in this case. Leeann Turner's declaration sufficed to enable the District to invoke the privilege with respect to documents 413 to 418.

The Turner declaration did not address any of the documents withheld from the Third Production, however. Although the District asserted the deliberative process privilege in a supplemental *Vaughn* index to withhold some documents

from that production, it did not provide an affidavit or declaration to explain why those documents were within the privilege. This omission was not necessarily fatal. The District can satisfy its burden to provide "a sufficiently detailed description of what it is refusing to produce and why" by including all the necessary information in a *Vaughn* index alone.[45] When the District opts to rely on its *Vaughn* indexes, though, the index must supply enough information to enable the court to assess whether the District properly invoked the privilege.

The *Vaughn* index accompanying the Third Production has ten entries that claim the deliberative process privilege for a total of sixty-two documents (each entry covers more than one document). The entries identify the documents by number, date, time (e.g., "11:36 a.m."), sender, recipients, subject matter, and reason for withholding. The subject matter of seventeen of the documents is said to be "Request from Wash. Post about Peaceoholics." The subject matter of the other forty-five documents is said to be "Peaceoholics and DCPS//Deadline Today." The same reason is given for redacting all sixty-two of the documents: "Pre-decisional discussion re potential response to reporter's inquiry concerning Peaceoholics." No further substantive information is provided about the documents.

---

[45] *Fiduccia v. Dep't of Justice*, 185 F.3d 1035, 1042 (9th Cir. 1999).

In denying FOP's motion for reconsideration, the trial court did not address in detail the sufficiency of the District's explanation for asserting the deliberative process privilege with respect to these sixty-two documents. In our view, however, the assertion that all the redacted material in these documents involved a pre-decisional discussion about a potential response to a reporter's inquiry concerning Peaceoholics is too cryptic and unenlightening to enable the court to assess the propriety of the District's decision to withhold the material. The conclusory characterization of the redacted material does not confirm that it actually was "prepared in order to assist an agency decision maker in arriving at his decision"[46] and "recommendatory in nature"[47] or reflective of the participants' opinions and the give-and-take of a consultative process.[48] It is entirely possible, for example, that the withheld material merely consists of factual information about the MPD's involvement with Peaceoholics collected for the purpose of transmitting it to the inquiring reporter, or a recitation of internal MPD guidelines for responding to the

---

[46] *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992).

[47] *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

[48] *Petroleum Info.*, 976 F.2d at 1433; *Coastal States*, 617 F.2d at 867.

press.[49]   We are compelled to conclude that a genuine issue of material fact remains as to whether the District properly invoked the deliberative process privilege to redact documents in the Third Production.  Accordingly, we reverse the grant of summary judgment in favor of the District on this issue and remand the case to the trial court, where the District either must support its non-disclosure adequately or disclose the withheld material.

FOP has requested *in camera* review of the withheld documents by both the trial court and this court.  The decision to conduct *in camera* review is discretionary.[50]  Conducting such a review is burdensome for the courts; adequate affidavits or *Vaughn* indexes supporting the claim to exemptions are designed, in part, to alleviate such a potential burden.  Having found the Turner declaration

---

[49] One set of partially redacted documents is an email chain generated in response to a reporter's request for specific factual information—namely, confirmation of statistics published in Peaceoholics' annual report regarding the number of "crews" identified in schools by Peaceoholics and the number of conflicts Peaceoholics mediated in the previous year.  It seems unlikely that such a request would generate the sort of opinion or other comment protected from disclosure under the deliberative process privilege.

[50] *See Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973) ("In an effort to compensate, the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt.  Such an examination, however, may be very burdensome.").

sufficient to support the District's invocation of the deliberative process privilege with respect to documents 413 to 418, we deem it unnecessary to examine those documents *in camera* ourselves or to require the trial court to do so. As to the documentary material withheld from the Third Production, it will be up to the trial court on remand to decide whether *in camera* review would be appropriate.

## B. The Adequacy of the Government's Search

An agency's search conducted in response to a FOIA request "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."[51] In order to prevail on a motion for summary judgment, the "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."[52] The burden is on the agency to establish "through reasonably detailed affidavits that its search was reasonable."[53] It is not enough for an affidavit merely to state in conclusory terms that the

---

[51] *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

[52] *Doe v. District of Columbia Metro. Police Dep't*, 948 A.2d 1210, 1220 (D.C. 2008) (internal quotation marks omitted).

[53] *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

locations searched were "most likely to contain the information which had been requested"; rather, the affidavit must demonstrate "with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents."[54]

If the agency meets its burden, the FOIA requester can prevail in a motion for summary judgment only by showing that the agency's search was not made in good faith.[55] "Purely speculative claims about the existence and discoverability of other documents" are not sufficient to rebut the presumption of good faith accorded to an agency affidavit.[56] On the other hand, if the agency fails to meet its

---

[54] *Doe*, 948 A.2d at 1221. "At the same time," we have emphasized,

> there is no requirement that an agency search every record system, and a search is not presumed unreasonable simply because it fails to produce all relevant material. Nor need an agency demonstrate that all responsive documents were found and that no other relevant documents could possibly exist, and an agency's failure to turn up specific documents does not undermine the determination that it conducted an adequate search for the requested documents.

*Id.* at 1221 n.19 (internal quotation marks, brackets, and citations omitted).

[55] *Maynard*, 986 F.2d at 560.

[56] *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

burden, a FOIA requester may prevail on a motion for summary judgment "merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search."[57]

The search in this case encompassed the electronic communications of seventeen MPD employees and the paper files and hard drives of two of them. FOP argues that the District should have searched the electronic correspondence of at least eleven more individuals, some of whom work not for the MPD but in the Executive Office of the Mayor, and the hard-copy files of all seventeen individuals whose electronic correspondence was searched. FOP states that it has a "good faith belief" that these additional individuals possess responsive documents based on the fact that they are identified in the documents that have so far been produced.

In support of the adequacy of its search, the District submitted two declarations under penalty of perjury by Ms. Natasha Cenatus. Cenatus identified herself as the D.C. Freedom of Information Act Specialist (or "Officer") for the MPD. She averred that, upon receiving FOP's FOIA request, she arranged for the Office of the Chief Technology Officer to search "all MPD electronic

---

[57] *Id.*

correspondence, including data . . . stored on District computer servers," of seventeen named MPD employees. Cenatus said she had selected "these particular custodians based on [her] determination that they were—by virtue of their positions, titles and responsibilities—the individuals within MPD most likely to possess electronic communications responsive to" FOP's FOIA request.[58]

In addition, Cenatus stated that she forwarded the FOIA request to the departments within MPD that would "most likely have" responsive documents. "Those departments," she said, "included the Office of Resource Accountability of the Executive Office of the Chief of Police and the Grants Unit in the Office of Fiscal Accountability of the Executive Office of the Chief of Police." Her declarations do not name the other departments that received the FOIA request. Cenatus was aware of "only two individuals" who conducted a further search as a result of this transmittal.[59] One of them was Leeann Turner, who (according to

---

[58] Cenatus specified the several search terms that she directed be used for the electronic search, such as "'peaceoholics' AND 'grant'"; as previously mentioned, the adequacy of the search terms is not at issue in this appeal.

[59] Cenatus added that "other staff may have been involved in the searches within those departments." This indicates that Cenatus lacked knowledge as to whether or how searches were conducted in response to her transmittal of the FOIA request to the departments she thought "mostly likely" to possess responsive documents, or why searches may not have been conducted in some departments or by other recipients.

Cenatus) reported that she had searched for documents responsive to the FOIA request in her electronic files, her computer hard drive, and the paper files in her office and file cabinets.[60] The other, Janice Sullivan, reported to Cenatus that she had conducted a comparable search. (Sullivan did not provide a declaration.) Cenatus averred that Sullivan was "the *single* employee within MPD responsible for acting as the point of contact concerning all grants to the Peaecoholics. As a result of these responsibilities, Sullivan was the only MPD employee likely to maintain hard copy records responsive to [FOP's] FOIA request."[61]

In our view, the District did not meet its burden of establishing that it conducted a search "reasonably calculated to uncover all relevant documents."[62] The stumbling block is that the Cenatus declarations do not enable a judicial arbiter to evaluate whether the search was, in fact, reasonably comprehensive. Even

---

[60] Cenatus did not specify the department or office with which Turner was associated. Turner stated in her own declaration (discussed earlier in this opinion in connection with the District's assertion of the deliberative process privilege) that she was a former Executive Director for the Office of Resource Accountability, but she did not make clear whether she occupied that position at any time relevant to the FOIA request. It should be noted that Turner's declaration did not even mention her search for documents.

[61] Cenatus's declaration did not specify (and the record does not otherwise reveal) Sullivan's position either.

[62] *Rein v. Patent & Trademark Office*, 553 F.3d 353, 362 (4th Cir. 2009).

accepting the somewhat conclusory assertion that Sullivan was the "only" employee likely to have hard copies of documents responsive to the FOIA request—though we think it would be necessary to know more about her role in the activities covered by the request to be confident of that assertion—the declarations do not come close to justifying the choices made and the limitations imposed on the search for electronic communications. Because the declarations do not disclose anything about the "positions, titles, and responsibilities" of the other sixteen named MPD employees, a judge has no way of knowing whether they were in fact "most likely" (or likely at all) to have responsive documents, or whether other MPD employees should have been added to the search list. Similarly, it is unclear from the declarations whether any MPD offices other than the two Cenatus identified were likely to have relevant documents or, if so, whether other offices were searched.[63] Indeed, it even is unclear how thoroughly the two named offices were searched.

Because the District has not met its burden, FOP needs to show only that the District "might have discovered a responsive document had [the District]

---

[63] *Cf. Doe v. District of Columbia Metro. Police Dep't*, 948 A.2d 1210, 1221 (D.C. 2008) ("At the very least, the agency is required to explain in its affidavit that no other record system was likely to produce responsive documents.") (internal quotation marks and brackets omitted).

conducted a reasonable search" in order to defeat the District's motion for summary judgment.[64] FOP has made this showing; it has demonstrated that there are other MPD employees who may possess responsive documents, namely, the employees (whose electronic communications were not searched) referenced in the documents the District did produce.

This is not to say that the District now must conduct the precise search that FOP demands in order to fulfill its obligation to perform an adequate search. For one thing, the fact that the District should not have been awarded summary judgment with respect to the sufficiency of its search does not mean FOP was entitled to judgment on that issue. If the District, on remand, supplements the Cenatus declarations with a sufficiently detailed declaration, it may yet be able to establish that its previous searches were adequate and that no further search is necessary. Even if further searching is required, the District is not necessarily obliged to search the files of the specific MPD employees that FOP has identified as possibly having responsive documents.[65] That certain individuals are referenced

---

[64] *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

[65] Nor is the District obligated to search the files of persons in the Executive Office of the Mayor, as FOP asserts, even if it is likely such persons do have relevant documents. The FOIA request asked only for "documents and information in the possession, custody, or control of the Metropolitan Police

*(continued…)*

in responsive documents found in the District's previous searches does not automatically mean the District must search their files too, "following an interminable trail of cross-referenced documents."[66] However, the District cannot claim that its search is adequate by ignoring evidence that suggests otherwise.[67] If the results of an initial search contain "leads" indicating that additional responsive documents are likely to be found in another location, those leads must be followed. Such "leads" change the agency's, and the court's, assessment of what is reasonable; "[c]onsequently, the court evaluates the reasonableness of an agency's search based on what the agency knew at its conclusion rather than what the agency speculated at its inception."[68] This does not mean that the District will be put to a never-ending series of searches or that it must proceed beyond the point of diminishing returns.[69] Once it has met its burden of demonstrating that it

---

*(continued…)*
Department." If FOP wants to request documents from other agencies or departments of the District of Columbia Government, it is free to do so.

[66] *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).

[67] *See Valencia-Lucena v. United States Coast Guard, FOIA/PA Records Management*, 180 F.3d 321, 327 (D.C. Cir. 1999) ("[I]t is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden.").

[68] *Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998).

[69] *Id.*

*(continued…)*

performed a search reasonably calculated to uncover all responsive documents, the District will not be "required to chase rabbit trails that may appear in documents uncovered during their search."[70]   At that point, the District will be entitled to prevail on summary judgment unless FOP can show that the search was not carried out in good faith.

C. *Timeliness of the District's FOIA Response*

Finally, FOP argues that it was entitled to summary judgment on its claim that the District failed to produce documents responsive to its FOIA request in a timely fashion.  It is less than clear what effect such a judicial declaration would have in this case, since the only consequence provided in FOIA for an agency's failure to comply with the Act's time provisions is that the request is deemed to have been denied and the requestor is deemed to have exhausted his administrative remedies (a prerequisite to seeking judicial relief to compel agency action).[71]   We need not explore this question further, however, because we are satisfied that the

_____

*(continued…)*

[70] *Rein v. Patent & Trademark Office*, 553 F.3d 353, 365 (4th Cir. 2009).

[71]  *See* D.C. Code § 2-532 (e) (2012 Repl.).

trial court correctly ruled that the District complied with the time deadline in the D.C. FOIA.

The Act provides that a public body upon receiving a request for any public record "shall within 15 days (except Saturdays, Sundays, and legal public holidays) . . . either make the requested public record accessible or notify the person making such request of its determination not to make the requested public record or any part thereof accessible and the reasons therefor."[72]  In the present case, the District received FOP's request on July 23, 2010.  It therefore had until August 13, 2010, to respond as FOIA required.  The District met that deadline by producing on that date all the documents in its possession that it deemed to be responsive to FOP's request and non-exempt along with a *Vaughn* index identifying all the responsive documents it had determined to withhold and its reasons for doing so.

It is true, as FOP points out, that the District produced additional responsive documents in its Second and Third Productions (as well as a supplemental *Vaughn* index to additional documents withheld in whole or part from the latter production) *after* the statutory fifteen-day deadline had passed.  FOP argues that these

---

[72]  D.C. Code § 2-532 (c) (2012 Repl.).  The fifteen-day time limit may be extended by up to ten days in "unusual circumstances."  *Id.* § 2-532 (d).

subsequent productions were untimely. We agree with the trial court that "[t]his argument conflates the statutory requirements of timeliness and sufficiency." Where the District has responded in good faith to a FOIA request within the time prescribed by the statute, enabling the requestor to seek relief in court for any perceived deficiencies such as the inadequacy of the agency's search for responsive documents or the unavailability of a claimed exemption, we think the principal purpose of the statutory deadline has been accomplished and the District has complied with its duty to make a timely response. That the District later discloses more responsive documents, either voluntarily or pursuant to court order, does not mean it has disregarded the Act's time provisions.[73]

## III.    Conclusion

We affirm the trial court's grant of partial summary judgment in favor of the District on the issues of its assertion of the deliberative process privilege to withhold documents 413 to 418 and the timeliness of its compliance with the time

---

[73] *Cf. Ctr. for Biological Diversity v. Gutierrez*, 451 F. Supp. 2d 57, 70 (D.D.C. 2006) ("Despite its full plate, NMFS responded to the Center's most recent request, Request 594, within 20 days; the fact that further documents were later released as they were identified as responsive to that request demonstrates not dilatory conduct but the serious attention NMFS gives to its FOIA obligations.").

provisions of FOIA.  We vacate the grant of partial summary judgment in favor of the District with respect to the adequacy of its search for responsive documents and its invocation of the deliberative process privilege to justify its redaction of documents in the Third Production.  We remand the case to the trial court for further proceedings in accordance with our opinion.


*So ordered*.